STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. IRVING L. BANDER, DEFENDANT-APPELLANT.

Argued March 17, 1970—Decided June 2, 1970.

*Mr. Daniel J. O'Hern* argued the cause for appellant (*Messrs. Abramoff, Apy & O'Hern,* attorneys).

*Mr. Elliot L. Katz,* Assistant County Prosecutor, argued the cause for the respondent (*Mr. Vincent P. Keuper,* Monmouth County Prosecutor, attorney).

*Mr. Arthur M. Greenbaum* argued the cause for the New Jersey Association of Realtor Boards, *amicus curiae,* (*Messrs. Greenbaum, Greenbaum & Rowe,* attorneys; *Mr. Lawrence B. Mink* on the brief).

*Mr. Thomas T. Warshaw* argued the cause for the Monmouth County Bar Association, *amicus curiae,* (*Messrs. Drazin, Warshaw, Auerbach & Rudnick,* attorneys; *Messrs. Thomas T. Warshaw* and *John D'Amico, Jr.,* on the brief).

*Mr. Emanuel A. Honig* argued the cause for the New Jersey State Bar Association, *amicus curiae.*

The opinion of the court was delivered by

HANEMAN, J. This matter involves the conviction of defendant Irving L. Bander for engaging in the unauthorized practice of law in violation of *N. J. S.* 2A:170–78.

Defendant, a licensed real estate broker in the State of New Jersey, prepared a contract of sale for certain property located in Bradley Beach, N. J., by making insertions in a Julius Blumberg law blank described as "Agreement for the Sale of Real Property, Short Form—New Jersey" and by adding a paragraph providing that the seller pay a mortgage placement fee and $300 toward closing costs. The defendant also drafted a mortgage contingency clause and a clause giving purchasers the option to waive rights granted by the mortgage contingency clause. A later clause drafted by defendant dealt with personal property to be included in the sale.

Defendant sent this instrument to the sellers at their home in Michigan. The sellers returned the signed document to their attorney in New Jersey, a member of the Bar of this State. He added two clauses dealing with the adjustment of

rents, insurance premiums, taxes, zoning ordinances, etc. The said attorney then returned the contract to defendant. Some days later purchasers signed the contract in defendant's office. They were not then represented by nor had they consulted an attorney.

This action was instituted on May 8, 1968, when one of the purchasers filed a complaint in the Municipal Court for the City of Asbury Park charging defendant with practicing law in violation of *N. J. S.* 2A:170–78 which reads in pertinent part:

Any person not licensed as an attorney or counselor at law, and any corporation that:
a. Engages in this state in the practice of law; * * * Is a disorderly person.

*N. J. S.* 2A:170–81 provides:

The provisions of this article shall not apply to:
*        *        *        *        *        *        *        *
d. The drawing of deeds, bonds, mortgages, leases, releases, agreements or assignments by a licensed real estate broker or any one employed by him; * * *.

After a full trial on the merits, the Municipal Court Magistrate concluded that the defendant had engaged in the unlawful practice of law "in selecting a legal form as appropriate for use in the sale of real property, completing the form by inserting information, and causing the form to be signed by the buyers." The court further held that the provision in *N. J. S.* 2A:170–81(d), ostensibly exempting defendant's acts, was unconstitutional and a nullity. He therefore found defendant guilty, fined him $25, and suspended the fine.

On appeal, the Monmouth County Court, after a trial *de novo* on the record below, found the defendant guilty for essentially the reasons stated by the Municipal Court Magistrate. However, the court imposed a fine of $250 "to act as a deterrent to others from committing the same

offense." Defendant sought review in the Appellate Division and this Court certified on its own motion prior to argument there. *R.* 2:12–1.

As noted by both lower courts, Art. VI, § 2, par. 3 of the Constitution of 1947 vests in this Court exclusive jurisdiction over admission of persons to the practice of law and discipline of those admitted. *New Jersey Bar Ass'n v. Northern N. J. Mortgage Associates,* 32 *N. J.* 430 (1960) ; *New Jersey Bar Ass'n v. Northern N. J. Mortgage Associates,* 22 *N. J.* 184 (1956). In the first above cited case, this Court said :

while the Legislature may adopt a statute which penalizes the unlawful practice of the law (*N. J. S.* 2A:170–78) it may not constitutionally authorize the practice of the law by anyone not duly admitted to the bar by this court. 32 *N. J.* at 436, 437.

Both courts in the present matter concluded that in enacting *N. J. S.* 2A:170–81(d) the legislature was attempting by the exempting paragraph to authorize certain practices of law, thus divesting this Court of its exclusive authority. Consequently, that section was declared unconstitutional and a nullity and defendant was found guilty of violating *N. J. S.* 2A:170–78. The County Court placed reliance on *Jeffcott v. Erles,* 84 *N. J. Super.* 70 (Burl. Co. Dist. Ct. 1964), which stated in dictum that the exemption section in question was unconstitutional. We disagree with these conclusions.

■ As noted in the *New Jersey Mortgage Associates* cases, the legislature may constitutionally adopt a statute penalizing the unlawful practice of law. *N. J. S.* 2A:170–78 was originally adopted as Chapter 138, Laws of 1924. This chapter contained substantially the same exemptions as are set forth today in *N. J. S.* 2A:170–81. Our Court of Errors and Appeals had occasion to comment on the very exemption here in issue in *Morris v. Muller,* 113 *N. J. L.* 46 (E. & A. 1934). The main thrust of this decision concerned the liability of a real estate broker for alleged negligent prepara-

tion of a chattel mortgage. However, plaintiff also raised the issue of unlawful practice of law and the Court passed on the question as follows:

"Respondent insists that defendant, in the preparation of this document, was unlawfully engaged in the practice of law. But we do not think so. Chapter 138 of the Laws of 1924 (*P. L. p.* 308), as amended by chapter 268 of the Laws of 1928 (*P. L.* 1928, *p.* 676 [*Comp. St. Supp.* § 52–214t]), making it a misdemeanor for a person not duly licensed as an attorney or counselor-at-law to 'engage in the practice of the law,' expressly provides that the act shall not apply to the 'drawing of deeds, bonds, mortgages, leases, releases, agreements, or assignments by a master in chancery or a licensed real estate broker.' This clearly evinces a legislative purpose to vest in real estate brokers, who must, as a prerequisite to the right to a license, submit to examination as to their qualifications, the authority to draft the enumerated documents, and the Legislature's power to do so cannot be doubted." 113 *N. J. L.* at *p* 52.

In the *New Jersey Mortgage Associates* cases, this Court determined that under the Constitution of 1947, the legislature does not have the power to vest such authority in real estate brokers. If the sole intention of the legislature in adopting the subject statute was to vest real estate brokers with the power to prepare the enumerated documents, that statute would be unconstitutional. However, the purpose noted in *Morris v. Muller* is not the only one that may be ascribed to the legislature in the adoption of this exemption section. Contrary to *Morris,* we conclude that the general intent of the legislature in enacting *N. J. S.* 2A:170–78 was to aid the judiciary in its regulation of the practice of law by providing a mode of punishment for those found to have engaged in some unlawful practice. We feel that the purpose of *N. J. S.* 2A:170–81(d) was not to authorize the various practices set forth therein but merely to exempt those practices from the operation of *N. J. S.* 2A:170–78. It is a well-known canon of statutory construction that the general intention of a statute will control the interpretation of its parts. *Denbo v. Moorestown Twp.,* 23 *N. J.* 476 (1957); *Central R. R. of N. J. v. Division of*

*Tax Appeals,* 8 *N. J.* 15 (1951); *Goff v. Hunt,* 6 *N. J.* 600 (1951); *Hackensack Water Co. v. Ruta,* 3 *N. J.* 139 (1949). So here the purpose of *N. J. S.* 2A:170–81(d) is controlled by the general purpose of *N. J. S.* 2A:170–78. It was intended merely as an exception from the general penal provision of *N. J. S.* 2A:170–78 and not as a separate affirmative authorization.

To presently ascribe only that legislative purpose noted in *Morris,* would render this section unconstitutional. But, as this section is subject to a different and constitutional construction, it will be construed in that manner so as to effectuate the general statutory scheme. *State v. Clark,* 15 *N. J.* 334 (1954); *Modern Industrial Bank v. Taub,* 134 *N. J. L.* 260 (E. & A. 1946). So interpreted the legislature did not attempt to authorize the practice of law by licensed real estate brokers but merely singled out those acts of a real estate broker which, even if considered the practice of law, would not subject him to criminal punishment. Since defendant's actions fall within this statutory exemption, he is not subject to punishment under *N. J. S.* 2A:170–78.

Due to the above findings, we need not reach the question whether defendant's actions constituted an unauthorized practice of law. This opinion is not to be understood to mean that what defendant here did, does not constitute the practice of law or that such conduct by one not a member of the Bar of this State is authorized or condoned by this Court. The question of whether defendant's acts amounted to the unauthorized practice of law was partially explored at the oral argument of the matter *sub judice.* It developed that the problem has so many ramifications that it could not be intelligently considered on the present record. As to that issue it is suggested that an answer might be obtained in a separate suit for an injunction against the type of acts undertaken by defendant or for a declaratory judgment. In this manner a complete and detailed record could be made disclosing, *inter alia,* the extent, length of existence, effect and result of the performance of similar acts by real estate

brokers generally and the public need for such service. This Court could then give a valued and intelligent reply to such an inquiry.

Reversed.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.