JAMES J. WHEATLY AND CHARLOTTE L. WHEATLY, HIS WIFE, PLAINTIFFS, v. MYUNG SOOK SUH AND IN SOOK SUH, HIS WIFE, DEFENDANTS.

MAFFUCCI REALTY, INC., PLAINTIFFS, v. MYUNG SOOK SUH AND IN SOOK SUH, HIS WIFE, DEFENDANTS.

U.S.A. TODAY REALTY, INC., PLAINTIFFS, v. MYUNG SOOK SUH AND IN SOOK SUH, HIS WIFE, DEFENDANTS.

Superior Court of New Jersey
Law Division Burlington County

Decided April 29, 1985.

David F. Carlamere for plaintiff Maffucci Realty, Inc. (*Carlamere, Rowan & Schemanski,* attorneys).

*Mary Ann DiCostanza* for plaintiff U.S.A. Today Realty, Inc. (*M. Bruce MacNaul,* attorney).

*Sheridan P. Hunt, Jr.* for plaintiffs James and Charlotte Wheatly (*Sheridan P. Hunt, Jr.,* attorney).

*Robert D. Thompson* for defendants Myung Sook Suh and In Sook Suh (*Pennington and Thompson,* attorneys).

HAINES, A.J.S.C.

This opinion considers:

(1) the application of *N.J.S.A.* 56:12, the "Plain Language Act" (Act) to a broker-prepared agreement of the sale of residential real estate;

(2) requirements concerning the use of the "attorney review clause" in that agreement; and

(3) whether the preparation of the agreement constituted the practice of law, inviting civil penalties.

The defendants Myung Sook Suh and In Sook Suh (Buyers) agreed to purchase a single family dwelling from James J. Wheatly and Charlotte L. Wheatly (Sellers) for $128,900. The agreement, dated February 7, 1984, consisted of a printed form prepared by Maffucci Realty Inc., a broker, with blanks that were completed by Maffucci. It required Sellers to pay a commission of $7,734 to Maffucci and a cooperating broker, U.S.A. Today (Brokers), to be divided equally. It also contained

a clause that the Buyers interpreted as permitting cancellation of the agreement, if an appraisal showed the property to be worth less than the purchase price. They cancelled the agreement in reliance on this clause when they received an appraisal reflecting a value of only $115,400.

Sellers then sued the Buyers for $10,000, the amount of the latter's deposit, which was to "be paid to Seller as liquidated damages or to be applied on account of purchase price ... in the event of the buyer not making settlement in accordance with the terms" of the agreement. Maffucci and U.S.A. Today brought separate suits against Buyers for the recovery of their commissions. Buyers counterclaimed for the return of their deposit and for damages, both compensatory and punitive. The suits were consolidated and all parties have moved for summary judgment. No material facts are in dispute. This opinion decides the motions in favor of Buyers, terminating the litigation.

## A. *Violations of the Plain Language Act*

■ The agreement of sale contained a mortgage contingency clause upon which Buyers relied in cancelling the agreement. They now argue, correctly, that this clause violates the Plain Language Act. The clause, a printed portion of the agreement with filled-in blanks, is reproduced as follows:

5. This Agreement is contingent upon mortgage financing as follows:

(a) Amount of mortgage loan required by Buyer: $98,900.

(b) Type Conventional, at the prevailing rate of interest.

(c) Commitment date for the approval of the mortgage: March 14, 1984

(d) Maximum mortgage placement fee, if any, to be paid by Seller: $-0-

(e) Minimum amount of appraisal required, if FHA financing: $-0-

(f) Mortgage loan application shall be made as provided herein and if said mortgage loan cannot be obtained, then deposit monies paid hereunder shall be returned to the Buyer and this Agreement shall be void and of no effect: otherwise, if the Buyer or Maffucci Realty Inc. is able to secure the said mortgage, this Agreement shall remain in full force and effect.

(g) Buyer shall make written applications for said mortgage within 7 days of Sellers execution hereof and shall give prompt and full cooperation in obtaining same. Should Buyer fail to make said applications, then Seller may

declare this Agreement null and void and all deposit monies shall be returned to Buyer. If Buyer or Buyer's Agent does not advise Seller or Seller's Agent of receipt of a mortgage commitment acceptable to Buyer on or before the date specified in subparagraph (c) above, then Seller (but not Buyer) shall have the option thereafter and until, but not beyond, the date of receipt of an acceptable commitment, to declare this Agreement null and void by notice in writing to Buyer or His Agent of his election to cancel and all deposit monies shall be returned to Buyer.

(h) It is expressly agreed that notwithstanding any other provisions of this contract, the purchaser shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the seller has delivered to the purchaser a written statement issued by the Federal Housing Commission setting forth the appraised value of the property (excluding closing costs), which statement the seller hereby agrees to deliver to the purchaser promptly after such appraised value statement is made available to the seller. The purchaser shall, however, have the privilege and option of proceeding with the consummation of the contract without regard to the amount of the appraised valuation made by the Federal Housing Commissioner. *The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the property. The purchaser should satisfy himself/herself that the price and condition of the property are acceptable.* It is expressly agreed that, notwithstanding any other provisions of the contract, the purchaser shall not incur any penalty by forfeiture of earnest money or otherwise be obligated to complete the purchase of the property described therein, if the contract price or cost exceeds the reasonable value of the property established by the Veterans Administration. The purchaser shall, however, have the privilege and option of proceeding with the consummation of this contract without regard to the reasonable value established by the Veterans Administration.

(i) Seller agrees to permit inspections by authorized appraisers and provide certifications as required to obtain FHA–VA financing.

The agreement was a "consumer contract," defined in *N.J. S.A.* 56:12–1 as "a written agreement in which an individual ... purchases real ... property." Its form was not approved by the Attorney General as permitted by the Act. [§ 8] It was required to "be written in a simple, clear, understandable and easily readable way." [§ 2] The Act sets forth Guidelines, consisting of examples and directions which a court "may" consider in determining whether a consumer contract as a whole complies with its provisions, namely:

(a)(1) Cross references that are confusing;

(2) Sentences that are of greater length than necessary;

(3) Sentences that contain double negatives and exceptions to exceptions;
(4) Sentences and sections that are in a confusing or illogical order;
(5) The use of words with obsolete meanings or words that differ in their legal meaning from their common ordinary meaning;
(6) Frequent use of Old English and Middle English words and Latin and French phrases.

. . . .

(b)(1) Sections shall be logically divided and captioned;
(2) A table of contents or alphabetical index shall be used for all contracts with more than 3,000 words;
(3) Conditions and exceptions to the main promise of the agreement shall be given equal prominence with the main promise, and shall be in at least 10 point type.[1] [§ 10]

The Maffucci contract, read as a whole, is not "simple, clear, understandable and easily readable." Its fifth paragraph eliminates any possibility of that conclusion. That paragraph calls for a "conventional" mortgage at the "prevailing rate" of interest, but does not define the meaning of "conventional" or "prevailing rate." Subparagraph (g) requires the Buyers to apply for a mortgage while subparagraph (f) permits Maffucci to secure a mortgage. The mortgage commitment, under (g), is to be "acceptable" to the Buyers. There is no definition of the term "acceptable." March 14, 1984, is the "commitment date for the approval of the mortgage." [ (c) ] The meaning of this phrase is not clear. Is the "commitment date" also the date for "approval"? By whom—lender or Buyers? Are the Buyers *required* to give "approval" or may they refuse? The agreement does not say. This becomes of added significance in view of other difficult language of (g): It permits the Sellers, but not the Buyers, to cancel the agreement upon failure to receive Buyers' advice "of receipt of the mortgage commitment acceptable to Buyer" on or before March 14, 1984, but the Sellers' option extends "until, but not beyond, the date of receipt of an acceptable commitment." Does this permit Buyers to obtain a

---

[1]Subparagraphs (a) and (b) are headed by identical phrases. Their repetition is not treated as meaningful.

commitment after March 14, 1984? References are made in (g) to Buyers' agent and Sellers' agent, either of whom (apparently) may receive notices; neither is identified. Buyers are to "give prompt and full cooperation in obtaining" the mortgage, according to (g), while (f) provides for the return of deposit monies "if said mortgage loan cannot be obtained." Does one clause modify the other? If so, how is "prompt and full cooperation" to be defined? Since (f) apparently gives Maffucci the right to obtain a mortgage, is one so obtained "acceptable" if it meets with Maffucci's approval but not the Buyers?

These confusions are multiplied by the provisions appearing in the first sentence of (h), which reads as follows:

> It is expressly agreed that notwithstanding any other provisions of this contract, the purchaser shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest deposits or otherwise unless the seller has delivered to the purchaser a written statement issued by the Federal Housing Commission setting forth the appraised value of the property (excluding closing costs), which statement the seller hereby agrees to deliver to the purchaser promptly after such appraised value statement is made available to the seller.

Sellers and Brokers claim that this language is unassailable because a regulation of the Federal Department of Housing and Urban Development (HUD) required its insertion. *HUD Mortgagee Letter* 78-8 (6/12/78). The Plain Language Act provides that "[t]he use of specific language in a consumer contract required, permitted or approved by a law, regulation, rule or published interpretation of a State or Federal agency shall not violate this Act." *N.J.S.A.* 56:12-6. The clause used in the Maffucci agreement, however, does not comply with the HUD regulation. It omits the important words: "not less than." Had they been included, the first sentence of (h) would have read:

> It is expressly agreed that notwithstanding any other provisions of this contract, the purchaser shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest deposits or otherwise unless the seller has delivered to the purchaser a written statement issued by the Federal Housing Commission setting forth the appraised value of the property (excluding closing costs), not less than $_____, which statement the seller hereby agrees to deliver to the purchaser promptly

after such appraised value statement is made available to the seller. [Emphasis supplied]

Presumably, although the HUD Rule does not so state, the dollar amount to be filled in the blank space would be the amount of the sale price. A literal reading of the defective sentence permits the Sellers to claim satisfaction of the appraisal condition regardless of the amount of any appraisal obtained. Consequently, not only is this language unprotected by the exception contained in the Act, its erroneous reproduction makes it absurd. It is far from "simple, clear, understandable and easily readable."

Subparagraph (h) has other disabilities. It requires an appraisal from the Federal Housing Commission (FHA) "notwithstanding any other provisions of this contract" although other provisions call for a "conventional" mortgage, which is not understood to refer to an FHA loan. It then provides that Buyers shall not be obliged to complete the purchase of the property "if contract price or cost exceeds the reasonable value of the property established by the Veteran's Administration." This is the first mention of the Veteran's Administration (VA). There is no reference elsewhere to VA financing. Is the "reasonable value" established by the VA meant to be the same as the appraisal issued by the FHA? Are the Buyers to rely upon the FHA or the VA, or upon an appraisal obtained in connection with a "conventional" mortgage? Subparagraph (h) also provides: "The purchaser should satisfy himself/herself that the price and condition of the property are acceptable." If the "purchaser" is not "satisfied," may the agreement be cancelled?

No further illustrations are necessary to show that the language of the agreement of sale violated the requirements of the Act, and did so without reference to the Guidelines. Their application, however, would quickly show that paragraph 5 contains confusing cross-references, sentences of greater length than necessary, exceptions to exceptions, sentences and sections in a confusing or illogical order, not logically divided

and not captioned.  Beyond question, the agreement of sale, even if only paragraph 5 thereof is examined, is not written "in a simple, clear, understandable and easily readable way as a whole" and thus violates the basic premise of the Plain Language Act, entitling the Buyers to the remedies which that Act provides.

Section 3 of the Act states:

> A creditor, seller or insurer or lessor who fails to comply with Section 2 of this Act shall be liable to a consumer who is a party to the consumer contract for actual damages sustained, if the violation caused the consumer to be substantially confused about the rights, obligations or remedies of the contract, plus punitive damages in an amount of $50.  The creditor, seller, insurer or lessors shall also be liable for the consumers reasonable attorney's fees and costs, not to exceed $2,500.

Brokers are not subject to the Act.  It does not mention them although the Bar Association and the Public Advocate expressed concern regarding its application to them in *N.J. State Bar Ass'n v. N.J. Ass'n of Realtor Bds.*, 93 *N.J.* 470 (1983), the case which permitted them to prepare some agreements of sale under specified conditions.  Nevertheless, brokers invite its application when they act on behalf of sellers in drafting agreements.  Such is the case here.  Sellers are subject to the provisions of the Act when they rely upon brokers to prepare their agreements to the same extent as they would be so subject when acting for themselves.  Their brokers' acts are their acts on these occasions.  Buyers read the agreement as permitting its cancellation in the event the appraised value of the property did not equal the purchase price.  That reading was both permissible and understandable in view of the language of paragraph 5.  The validity of the Buyers' reading, however, is not at issue.  It is enough that the violation of the Act caused them to be "substantially confused about the rights, obligations or remedies of the contract."  Such confusion is obvious, if they misread the agreement, and equally obvious if they did not.  It is the reason for this litigation.  The language of paragraph 5 is an abundant source of confusion.  As a result, the Buyers are entitled to recover from Sellers their

actual damages, punitive damages of $50, costs and reasonable attorneys' fees not to exceed $2,500. Defenses are set forth in the Act and require discussion, although none denies recovery.

There is no liability under the Act if: (1) the contract has been performed, or (2) the Sellers attempted in good faith to comply with the Act in preparing the agreement, or (3) it is in conformity with an opinion of the Attorney General, or (4) if the consumer supplied the contract or that portion of it to which the consumer objects. *N.J.S.A.* 56:12–5. None of these defenses is available. Only "good faith" requires discussion.

Section 5 of the Act provides in part: "There shall be no liability under Sections 3 and 4 [the liability and class action sections of the Act] if . . . the creditor, seller, insurer, or lessor attempts in good faith to comply with this act in preparing the consumer contract. . . ." "Good faith" requires a showing that consideration was given to the provisions of the Act when the agreement was prepared. Ignorance of the law is not a substitute for good faith. Indeed, sellers and brokers are required to know the "common law, legislative enactments and general customs insofar as they are likely to affect the conduct of other or third persons." *Restatement, Torts* 2d, § 290 (1965). Bona fides must be present and proved. The burden of supporting a good faith defense is upon the Sellers. They have failed to carry that burden. They assert no facts of any kind in support of a claim of good faith and, in fact, do not raise that defense in the pleadings.

The Buyers' right to damages, costs and attorneys' fees does not render the sales agreement "void or voidable, or serve as a defense in an action to enforce the consumer contract for breach thereof." *N.J.S.A.* 56:12–11. The present suit was commenced by the Sellers for the purpose of recovering the $10,000 deposit as liquidated damages. This claim, by reason of the quoted provision of the Act, is unaffected by the failure to use plain language. Without more, the Sellers would be entitled to the liquidated damages. Buyers, however, because

of Sellers' violation of the Act, are entitled to recover "actual damages." Damages would consist of the loss of the $10,000 deposit if it were awarded to Sellers. Sellers' right to damages is, therefore, nullified by the Buyers' right to damages.

Buyers are entitled to interest on the deposit monies since they have been denied its use. It is to be calculated from the date they cancelled the agreement and demanded return of their deposit. A reasonable interest rate is 12 percent, the amount allowed on judgments. *R.*4:42–11; *Busik v. Levine,* 63 *N.J.* 351, 356 (1973). In addition, they are entitled to punitive damages, fixed by the Act at $50, and to reasonable attorneys' fees. The date from which interest is to be calculated and the figure representing reasonable attorneys' fees must be established by further application to this court by the Buyers.

B. *Sellers' Breach of Contract*

The circular pursuit of "actual damages" can be avoided. The Act does not limit the Buyers to plain language claims. *N.J.S.A.* 56:12–7. They can, and do, advance other arguments. Buyers are entitled to recover the deposit monies with interest if Sellers breached their agreement by failing to perform a condition precedent. *American Handkerchief Corp. v. Frannat Realty Co.,* 17 *N.J.* 12 (1955). They did. Paragraph 5(h) of the agreement states "expressly", in part, that "the purchaser shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the Seller has delivered to the purchaser a written statement issued by the Federal Housing Commission setting forth the appraised value of the property (excluding closing costs), which statement the seller hereby agrees to deliver to the purchaser promptly after such appraised value statement is made available to the seller." Sellers never delivered the required statement. Its delivery was a condition to the Buyers' performance. The agreement, prepared by Sellers' agent Maffucci, if ambiguous, must be construed most strongly against the Sellers. *In re Miller's Estate,*

90 *N.J.* 210 (1982). Whether read strictly in accordance with this rule of interpretation, or, as to the quoted clause in paragraph 5(h), literally, the Sellers' failure excuses the Buyers' performance and makes Sellers liable for their breach of the agreement. They must, therefore, return the Buyers' deposit with interest, regardless of the provisions of the Plain Language Act. They are not liable on this theory, however, for attorneys' fees or punitive damages. *R.*4:42–9.

■ The Sellers' breach also bars the Brokers' commission claims. *Rothman Realty Co. v. Bereck,* 73 *N.J.* 590, 602 (1977).

Buyers also claim that Sellers and Brokers are liable to them because the preparation of the agreement by Maffucci constituted the unlawful practice of law.[2] Buyers resist Brokers' claim for commissions on that ground. This contention requires separate discussion.

## C. *The Attorney Review Clause*

In *N.J. State Bar Ass'n v. N.J. Ass'n of Realtor Bds.,* a class action, the Supreme Court authorized the preparation of residential real estate sales contracts by real estate brokers provided such contracts permitted an attorney to review its provision before it became effective. The Court said:

> Real estate brokers and salespersons licensed by the New Jersey Real Estate Commission shall be permitted to prepare contracts for the sale of residential real estate containing one-to-four dwelling units and for the sale of vacant one-family lots in transactions in which they have a commission or fee interest, PROVIDED that every such contract shall contain conspicuously at the top of the first page the following language:
> THIS IS A LEGALLY BINDING CONTRACT THAT WILL BECOME FINAL WITHIN THREE BUSINESS DAYS. DURING THIS PERIOD YOU MAY CHOOSE TO CONSULT AN ATTORNEY WHO CAN REVIEW AND CANCEL THE CONTRACT. SEE SECTION ON ATTORNEY REVIEW FOR DETAILS.

---

[2]Buyers' original claim was based upon the failure to include the attorney review clause in the agreement. This implicated the unlawful practice issue, which was argued in additional briefs requested by the court.

and shall also contain the following language within the text of every such contract:

ATTORNEY REVIEW:

1.  Study by Attorney

The Buyer or the Seller may choose to have an attorney study this contract. If an attorney is consulted, the attorney must complete his or her review of the contract within a three-day period. This contract will be legally binding at the end of this three-day period unless an attorney for the Buyer or the Seller reviews and disapproves of the contract.

2.  Counting the Time

You count the three days from the date of delivery of the signed contract to the Buyer or the Seller. You do not count Saturdays, Sundays or legal holidays. The Buyer and the Seller may agree in writing to extend the three-day period for attorney review.

3.  Notice of Disapproval

If an attorney for the Buyer or the Seller reviews and disapproves of this contract, the attorney must notify the Broker(s) and the other party named in this contract within the three-day period. Otherwise this contract will be legally binding as written. The attorney must send the notice of disapproval to the Broker(s) by certified mail, by telegram, or by delivering it personally. The telegram or certified letter will be effective upon sending. The personal delivery will be effective upon delivery to the Broker's office. The attorney should also inform the Broker(s) of any suggested revisions in the contract that would make it satisfactory. [93 *N.J.* at 475–76]

The Supreme Court made its decision effective on January 1, 1984, by order dated October 28, 1983, "in the absence of further action by the Court." *N.J. State Bar Ass'n v. N.J. Ass'n of Realtor Bds.*, 94 *N.J.* 449, 450 (1983). On December 21, 1983, according to a letter from the Clerk of the Supreme Court addressed only to counsel, the Court extended the effective date to February 15, 1984. No order to that effect was signed, however, until October 29, 1984. That order was published in the November 8, 1984, issue of the *New Jersey Law Journal.*

■ The agreement here considered was executed on February 7, 1984. Arguably, it was subject to the review clause requirement on the theory that the Supreme Court's order delaying the effective date of its opinion to February 15, 1984, did not apply to agreements executed between January 1, 1984, and the date on which a formal order was published since there

would be no adequate notice of the change in date until then. That argument, however, need not be made. It is clear that the Brokers were practicing law unlawfully whether or not the review clause requirement was in force on February 7, 1984. That is so because that is the necessary reading of the Supreme Court's decision in *N.J. State Bar Ass'n v. N.J. Ass'n of Realtors Bds.*, 93 N.J. 470.

The consent judgment which was approved in that case followed lengthy litigation addressing the central question of whether real estate brokers and sales personnel who were preparing agreements of sale in real estate transactions were involved in the practice of law. The Court's opinion addressed the issue only by indirection. However, it considered the application to approve the consent judgment "under our constitutional powers governing the practice of law." *Id.* at 472. It also said: "Since consensual resolution of the controversy would necessarily implicate the question of whether particular conduct would be considered by this court to constitute unauthorized practice of law, it was clear that court approval would be required." *Id.* at 473. Justice Schreiber faced the issue squarely in a dissenting opinion, saying: "The court is sanctioning the practice of law by realtors whose conduct in most cases will not have been reviewed by a member of the bar." *Id.* at 482. "The court implicitly acknowledges that the realtors will be practicing law, as well as it must. *See Cape May Cty. Bar Ass'n v. Ludlam*, 45 *N.J.* 121, 124 (1965); *N.J. State Bar Ass'n v. Northern N.J. Mtge. Ass'n*, 32 *N.J.* 430, 444 (1960)." *Id.* at 483.

The consent judgment, read with the approving opinion, permits a real estate broker to prepare a residential agreement of sale (for one to four dwelling units) only if the broker inserts the required attorney review clause. The Supreme Court could impose that limitation only because it had jurisdiction over the practice of law in New Jersey as a matter of constitutional right and responsibility. *N.J. Const.* (1947) Art. VI, § II, par. 3. The conclusion is therefore inescapable that the Court, in

regulating the preparation of agreements of sale, was defining the practice of law. It said that brokers could prepare only agreements which: (1) related to the sale of certain residential property, and (2) contained the attorney review clause. Otherwise, brokers would be practicing law.

This conclusion was a confirmation of what had always been the law, though not previously applied to brokers by the Supreme Court. For example, in *N.J. State Bar Ass'n v. Northern N.J. Mtge. Assocs.*, 32 *N.J.* 430 (1960), the Court said:

> The drawing of legal instruments by the Title Company for others (particularly, where, as here, it is compensated) is clearly within the traditional definition of the practice of law and nonetheless so where the drawing consists in the filling in and completion of legal forms. [at 444.]

It limited its opinion to "fields ... actually engaged in by the Title Company," but the application of the ruling to brokers preparing agreements of sale is obvious. *Jeffcott v. Erles*, 84 *N.J.Super.* 70 (D.Ct.1964) said so, citing *N.J. State Bar Ass'n v. Northern N.J. Mtge. Assocs.*

> That the preparation of these agreements of sale by the plaintiff's [real estate brokers] constituted the unlawful practice of law by persons unauthorized to engage in such practice there can be no doubt. [at 74.]

Nevertheless, in *State v. Bander*, 56 *N.J.* 196 (1970), the Court refused to decide the specific question, saying, "the problem has so many ramifications that it could not be intelligently considered on the present record." *Id.* at 202. *N.J. State Bar Ass'n v. N.J. Ass'n of Realtor Bds.* laid the issue to rest. It did so on June 28, 1983, when the Court's opinion was announced. That opinion provided the clearest possible notice to brokers that the preparation of *any* agreement of sale prior to the effective date of the stipulation approved by the Court was unlawful. It limited such preparation in the future to certain residential real estate agreements, provided they contained an attorney review clause.[3]

---

[3]N.J.S.A. 2A:170–78 makes the practice of law by one not licensed as an attorney a disorderly persons offense. N.J.S.A. 2A:170–81 c & d exempts persons engaged in the sale of real property and licensed real estate brokers

In the present case, therefore, the brokers were practicing law, either because the Court's opinion was not effective until after February 7, 1984, and they were not permitted to prepare agreements under any circumstances, or because the opinion was effective and the agreement did not contain an attorney review clause. Furthermore, Maffucci and U.S.A. Today are corporations. As such they are not authorized to practice law. R.1:21-1 and 1A.

As a consequence, Maffucci and U.S.A. Today, who claims through Maffucci, cannot collect commissions. The preparation of the agreement was a central part of the services upon which the commission claims are based. It taints those services in their entirety, making the claim illegal and unenforceable. *Marx v. Jaffe*, 92 *N.J.Super.* 143 (App.Div.1966). The recovery of compensation for legal services by one not authorized to practice law is not permissible. *Appell v. Reiner*, 81 *N.J.Super.* 229, 239 (Ch.Div.1963), rev'd on other grds., 43 *N.J.* 313 (1964); *Stack v. P.G. Garage*, 7 *N.J.* 118 (1951).

Maffucci's unlawful practice does not affect the Sellers, although Maffucci was their agent, or the Buyers, who were parties to the agreement that Maffucci prepared. No proof has been presented to show that either Sellers or Buyers knew that the preparation of the agreement was unlawful. The rule that made it unlawful was designed to protect the public from injury by persons not learned in the law. *Appell v. Reiner*, 81 *N.J.Super.* at 236. Sellers and Buyers are members of the protected class. Neither should be deprived of the right to enforce their agreement by a rule designed for their protection. *Marx v. Jaffe*, 92 *N.J.Super.* at 147; *Ryan v. Motor Credit Co.*, 130 *N.J.Eq.* 531, 547 (Ch.Div.1941).

---

who prepare agreements of sale from the provisions of § 78. The exemption, however, has been held to apply only with respect to the label "disorderly person." *State v. Bander, supra,* in which the Court also said: "If the sole intent of the Legislature in adopting the subject statute was to vest real estate brokers with the power to prepare the unnumbered documents, the statute would be unconstitutional." *Id.* at 56 *N.J.* 201.

## C. *Conclusion*

Buyers' motion for summary judgment must be granted. Sellers' and Brokers' motions for summary judgment must be denied. Final Judgment is to be entered:

1. Denying the Sellers' claim to the $10,000 deposit.
2. Denying the claims of Maffucci and U.S.A. Today for commissions.
3. In favor of the Buyers and against the Sellers for (a) $10,000; (b) interest on $10,000 at the rate of 12% per annum from a date to be fixed; (c) $50 in punitive damages; and (4) reasonable attorneys fees and costs to be assessed.