217 N.J. Super. 233 (1987)
525 A.2d 340
JAMES J. WHEATLY AND CHARLOTTE L. WHEATLY, PLAINTIFFS-APPELLANTS-CROSS-RESPONDENTS,
v.
MYUNG SOOK SUH AND IN SOOK SUH, DEFENDANTS-RESPONDENTS-CROSS-APPELLANTS,
v.
MAFFUCCI REALTY, INC., THIRD-PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 9, 1987.
Decided April 27, 1987.
*235 Before Judges PETRELLA, BILDER and GAYNOR.
Sheridan P. Hunt, Jr., argued the cause for appellants.
James Curcio argued the cause for respondents Myung Sook Suh and In Sook Suh (Pennington & Thompson, attorneys; Robert D. Thompson and James Curcio on the brief).
Michael J. Frank argued the cause for respondent Maffucci Realty, Inc. (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Henry G. Morgan on the brief).
The opinion of the court was delivered by GAYNOR, J.A.D.
Plaintiffs-sellers appeal from a judgment adjudicating the contract for the sale of their residence property to defendants-buyers as violative of the Plain Language Act, N.J.S.A. 56:12-1, et seq. and declaring their failure to have obtained a statement of the Federal Housing Commission setting forth the appraised *236 value of the property as a breach of the contract, thereby entitling defendants to a return of the deposit. Plaintiffs also contest the limitation on the nature of the damages awarded to them on their cross-claim against the broker who prepared the faulty contract.
The facts giving rise to this action are not in dispute. Plaintiffs, James J. and Charlotte Wheatly (sellers) entered into a listing agreement with Maffucci Realty, Inc. (broker) for the sale of their home at 109 Mohawk Trail, Shamong Township, Burlington County. Through the efforts of the broker and a co-broker, defendants, Myung Sook and In Sook Suh (buyers) submitted an acceptable offer for the property. Utilizing a preprinted form of contract and by filling in the blanks with the appropriate information, the broker prepared an agreement of sale which was executed by the parties.[1] The contract called for a deposit of $10,000, which was paid by the buyers, and contained the following mortgage financing contingencies:
This Agreement is contingent upon mortgage financing as follows:
(a.) Amount of mortgage loan required by Buyer: $98,900.00

(b.) Type Conventional, at the prevailing rate of interest.
(c.) Commitment date for the approval of the mortgage: March 14, 1984.

(d.) Maximum mortgage placement fee, if any, to be paid by Seller: $-0-
(e.) Minimum amount of appraisal required, if FHA financing: $-0-
(f.) Mortgage loan application shall be made as provided herein and if said mortgage loan cannot be obtained, then deposit monies paid hereunder shall be returned to the Buyer and this Agreement shall be void and of no effect; otherwise, if the Buyer or Maffucci Realty Inc. is able to secure the said mortgage, this Agreement shall remain in full force and effect.
(g.) Buyer shall make written applications for said mortgage within 7 days of Sellers execution hereof and shall give prompt and full cooperation in obtaining same. Should Buyer fail to make said applications, then Seller may declare this Agreement null and void and all deposit monies shall be returned to Buyer. If Buyer or Buyer's Agent does not advise Seller or Seller's Agent of receipt of a mortgage commitment acceptable to Buyer on or before the date specified in subparagraph (c) above, then Seller (but not Buyer) shall have the option thereafter and until, but not beyond, the date of receipt of an acceptable *237 commitment, to declare this Agreement null and void by notice in writing to Buyer or His Agent of his election to cancel and all deposit monies shall be returned to Buyer.
(h.) It is expressly agreed that notwithstanding any other provisions of this contract, the purchaser shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the seller has delivered to the purchaser a written statement issued by the Federal Housing Commission setting forth the appraised value of the property (excluding closing costs), which statement the seller hereby agrees to deliver to the purchaser promptly after such appraised value statement is made available to the seller. The purchaser shall, however, have the privilege and option of proceeding with the consummation of the contract without regard to the amount of the appraised valuation made by the Federal Housing Commissioner. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the property. The purchaser should satisfy himself/herself that the price and condition of the property are acceptable. It is expressly agreed that, notwithstanding any other provisions of the contract, the purchaser shall not incur any penalty by forfeiture of earnest money or otherwise be obligated to complete the purchase of the property described therein, if the contract price or cost exceeds the reasonable value of the property established by the Veterans Administration. The purchaser shall, however, have the privilege and option of proceeding with the consummation of this contract without regard to the reasonable value established by the Veterans Administration.
(i) Seller agrees to permit inspections by authorized appraisers and provide certifications as required to obtain FHA-VA financing. [Emphasis in original.]
In accordance with paragraph 5(g) the buyers applied for the required conventional mortgage. When the appraisal of the property obtained by the lending institution was seen to be less than the purchase price, the buyers informed the sellers they were withdrawing from the contract, relying upon the failure of the sellers to have delivered a Federal Housing Commission (FHA) appraisal as provided for in paragraph 5(h) of the contract. The present litigation was then commenced by the sellers seeking to retain the contract deposit as liquidated damages for what they considered to be the buyers' default. The buyers counterclaimed for their deposit on the basis of plaintiffs' alleged breach of the agreement and also filed a third-party complaint against the broker for failure to include an attorney-review clause in the contract and for preparing a contract which violated the Plain Language Act.
*238 On cross-motions for summary judgment, Judge Haines concluded that:[2]
1. Sellers breached the agreement by not providing Buyers with an appraisal, thus barring the Sellers' claims.
2. Sellers breached the Plain Language Act because the language of the agreement is confusing. This entitles the Buyers to the return of their $10,000 deposit, to punitive damages of $50, to costs, to interest on the $10,000, and to reasonable attorney's fees.
3. Buyers are also entitled to the return of the $10,000 with interest as a result of the Sellers' breach of the agreement.
Following this determination, plaintiffs cross-claimed against the broker seeking damages on theories of breach of contract, negligence, wrongful conduct and indemnification. Although finding that the broker breached the implied conditions of the listing agreement in preparing a contract which violated the Plain Language Act and constituted the unlawful practice of law, the judge concluded that such conduct was not the proximate cause of any loss incurred by plaintiffs because of the buyers' cancellation of the contract, except for the statutory liability for attorney fees and punitive damages pursuant to the Plain Language Act. Similarly, the negligence of the broker in preparing the defective contract was deemed not to be causally related to any damages suffered by plaintiffs.
In appealing from the final order of January 2, 1986, which incorporated all of the trial court's determinations, plaintiffs advance the following contentions:
I. THE TRIAL JUDGE ERRED IN FINDING (A) THAT SUB-PARAGRAPH 5(h) OF THE AGREEMENT OF SALE WAS APPLICABLE IN THE TRANSACTION AND (b) THAT PLAINTIFFS BREACHED THE TERMS OF THE AGREEMENT.
II. THE TRIAL JUDGE ERRED IN FINDING THAT THE AGREEMENT OF SALE FAILED TO SATISFY THE REQUIREMENTS OF THE PLAIN LANGUAGE ACT.
III. IF THE TRIAL JUDGE DID NOT ERR IN HIS FINDINGS UNDER POINTS I AND II ABOVE, THEN THE TRIAL JUDGE ERRED (A) IN FINDING THAT THERE WAS NO BREACH OF CONTRACT BY THIRD-PARTY *239 DEFENDANT MAFFUCCI AND (B) IN FINDING THAT THIRD-PARTY DEFENDANT MAFFUCCI'S NEGLIGENCE WAS NOT THE PROXIMATE CAUSE OF PLAINTIFFS' DAMAGES.
IV. THE PLAINTIFFS ARE ENTITLED TO RECOVER THEIR ACTUAL DAMAGES, INCLUDING ATTORNEYS FEES.
Defendants also cross-appeal from their award of counsel fees claiming they were entitled to an award of $2,500, being the full statutory attorney's fee as allowed by N.J.S.A. 56:12-3, rather than the $1,500 which the court considered as representing a reasonable fee for services related to the Plain Language Act issue.
While we agree with the conclusion that the contract violated the Plain Language Act, we do so without focusing upon paragraph 5(h) of the agreement as, in our view, this clause, although part of the preprinted form, by virtue of its content as well as other provisions of the contract, clearly was not part of the agreement between the parties. This construction leads us to question the determination that plaintiffs had breached the contract by not obtaining and delivering to defendants a statement from the FHA setting forth an appraised value of the property. We are also constrained to disagree with the further decision that the conduct of the broker was not as a matter of law causally related to the losses incurred by plaintiffs by reason of the failure of the transaction. Finally, we perceive no grounds for disturbing the trial judge's determination of a reasonable attorney's fee recoverable by defendants under N.J.S.A. 56:12-3.

I
In construing a contract a court must not focus on an isolated phrase but should read the contract as a whole as well as considering the surrounding circumstances. Joseph Hilton & Associates, Inc. v. Evans, 201 N.J. Super. 156, 171 (App.Div. 1985). Additionally, "the conduct of the parties after execution of the contract is entitled to great weight in determining its meaning." [Citation omitted.] Ibid. Furthermore, "an agreement *240 must be construed in the context of the circumstances under which it was entered into and it must be accorded a rational meaning in keeping with the express general purpose." [Citation omitted.] Anthony L. Petters Diner, Inc. v. Stellakis, 202 N.J. Super. 11, 28 (App.Div. 1985). Moreover, a subsidiary provision should not be interpreted in such a manner as to conflict with the obvious or dominant purpose of the contract. Newark Publishers' Assn. v. Newark Typographical Union, 22 N.J. 419, 426 (1956).
The application of these rules to the present case compels the conclusion that paragraph 5(h) of the contract had no applicability to the contemplated transaction evidenced by the agreement. A reading of this provision in its entirety indicates that the delivery to the buyers of a "statement issued by the Federal Housing Commission setting forth the appraised value of the property" was required of the sellers only in the event the purchase was being financed by a federally insured FHA or VA mortgage. This is made evident by that portion of 5(h) which states "[t]he appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure," and by paragraph 5(i) which pertains to inspections "by authorized appraisers ... as required to obtain FHA-VA financing." An interpretation which renders this provision of the contract applicable to a purchase being financed by a conventional mortgage ignores the rational meaning of the clause as well as the common intent of the parties as expressed in other provisions of the contract and as disclosed by the attendant circumstances.
Clearly, the parties intended that the mortgage contingency provision in the agreement should relate to the conventional mortgage to be applied for by defendants. Paragraph 5(b) expressly described the mortgage financing as "conventional" and paragraph 5(e) indicated that FHA financing was not involved. Furthermore, the conduct of defendants after the execution of the agreement in not seeking an FHA mortgage *241 confirmed the apparent understanding of the parties that the printed provisions in the contract pertaining to FHA financing were not applicable to the transaction.
While paragraph 5(h) should have been deleted from the contract, the failure to do so should not require that it be enforced as part of a transaction to which it was never intended to apply. As observed in Newark Publishers' Assn. v. Newark Typographical Union, supra, "[w]ords and phrases are not to be isolated but related to the context and the contractual scheme as a whole, and given the meaning that comports with the probable intent and purpose; and thus the literal sense of terms may be qualified by the context." [Citation omitted; 22 N.J. at 426.] Considering the contract as a whole, its general purpose and the circumstances surrounding its execution, the requirement contained in paragraph 5(h) pertaining to an FHA appraisal cannot be viewed, either literally or by reason of ambiguity, as a condition precedent to the buyers' performance. We therefore find no breach of the contract by the sellers precluding their retention of the deposit as liquidated damages flowing from the buyers' withdrawal from the purchase.

II
Although the inclusion of paragraph 5(h) in the agreement may have constituted a violation of the Plain Language Act, we find sufficient transgressions in other provisions of the contract warranting the conclusion as expressed by Judge Haines that the agreement "is not written `in a simple, clear, understandable and easily readable way as a whole' and thus violates the basic premise of the Plain Language Act, entitling the Buyers to the remedies which that Act provides." Wheatly v. Myung Sook Suh, 207 N.J. Super. 539, 547 (Law Div. 1985). Judge Haines' thorough dissection of the mortgage contingency provisions as contained in paragraphs 5(f) and (g) of the contract permits no doubt that these provisions failed the test of the Plain Language Law. A comparison of corresponding *242 provisions in a contract form certified by the Attorney General to be in compliance with the Plain Language Law graphically illustrates the deficiencies in the Maffucci contract. A comparative reading of the clauses pertaining to the quality of the title to be delivered in the two forms of agreement leads to the same conclusion.[3]
It is noted that plaintiffs have not challenged Judge Haines' finding that none of the statutory defenses to a violation of the Act, N.J.S.A. 56:12-5, had been established.
We therefore concur with the trial judge's determination that the violation caused the buyers to be "substantially confused about the rights, obligations or remedies of the contract" thus entitling them to a recovery of their actual damages, punitive damages of $50, costs and reasonable attorney's fees not to exceed $2,500.[4]

III
In concluding that the wrongful conduct of the broker was not the proximate cause of any loss which plaintiffs incurred as a result of the buyers' withdrawal from the purchase, except for the statutory damages under the Plain Language Act, Judge Haines reasoned in his letter opinion of September 30, 1985:[5]
Damage assessment presents difficulties. Assuming there was no understanding by sellers and Maffucci as to the terms of any sales agreement prepared by Maffucci (ignoring the fact that sellers signed an agreement and thereby, arguably, accepted its terms), it cannot be said with any certainty what *243 terms should have been employed in the contract with the buyers. For example, a proper agreement of sale might well have contained a clause permitting the buyers to cancel if the appraised value of the property was less than its sale price. Such was the case here. Consequently, the buyers could have cancelled any agreement of sale no matter how well drawn by Maffucci, if the appraisal clause were included. It is not known whether buyers could have secured a mortgage. That was a condition of the agreement of sale actually prepared. In all likelihood it would have been a condition in any agreement prepared by Maffucci and could be the cause of cancellation without giving rise to any claim for damages against the broker. A proper agreement may have required the inclusion of an attorney review clause. The buyers might have cancelled as permitted by that clause, without reason, and without providing the sellers with any claim for damages against anyone. It is therefore impossible to say that the poorly drafted agreement, in fact, resulted in any of the claimed losses, other than those occasioned by application of the Plain Language Act.
* * * * * * * *
Maffucci, unquestionably, was negligent in the preparation of the agreement of sale. It was badly drawn for all of the reasons set forth in my written opinion. Maffucci is therefore liable for damages proximately flowing from the negligent acts. For all of the reasons stated above, however, it cannot be said that Maffucci's negligence was the proximate cause of any damages suffered by the sellers, except those imposed under the Plain Language Act discussed below. There can be no recovery on a theory of negligence.
It is true, as Judge Haines observed, that a properly drawn contract might have allowed the buyers to escape if their appraisal was less than the purchase price, or might have been canceled by operation of an attorney review clause. However, the fact is that the agreement which was prepared by the broker did not so provide but rather was prepared in such a manner as to prompt the buyers to withdraw thereby leaving the plaintiffs without the benefit of their bargain and allegedly subjecting them to certain losses. A claim for damages may not be denied on the basis of the possibility that no loss would have been sustained had the agreement contained escape clauses which it did not. We view this as a mistaken application of the rule that an act or omission will not be regarded as the cause of an event if the event would have occurred without it. See Kulas v. Public Service Elec. & Gas Co., 41 N.J. 311, 317 (1964). Further, we find no factual support in the record for the broker's contention that the contract was terminated because *244 of the buyers' inability to obtain adequate mortgage financing, thereby rendering the content of the agreement incapable of being a substantial factor in bringing about plaintiffs' claimed losses. Rather, as has been determined, the contract was terminable because it violated the Plain Language Law  an event which could not have occurred except for the negligent conduct of the broker. This nexus between the act and the event permits a finding of a causal relationship between the broker's negligence and the asserted loss incurred by plaintiffs. The test of proximate cause is satisfied when the negligent act is a substantial contributing factor in causing the loss. Lamb v. Barbour 188 N.J. Super. 6, 12 (App.Div. 1982), certif. den., 93 N.J. 297 (1983). Accordingly, plaintiffs should have been permitted to proceed on their cross-claim against the broker for recovery of the damages allegedly sustained by reason of the broker's wrongdoing, instead of being limited as a matter of law to those which were imposed pursuant to the Plain Language Act.

IV
We find no merit in the buyers' contention on their cross-appeal that the trial judge erred in fixing the counsel fee award on the basis of services allocable to the Plain Language issue. N.J.S.A. 56:12-3 provides that a "seller ... who fails to comply with section 2 of this act shall ... also be liable for the consumer's reasonable attorney's fees and costs, not to exceed $2,500.00." Considering the nature of the services rendered, Judge Haines concluded that a fee of $1,500 was reasonable. We are unpersuaded by defendants' argument that the allocation approach adopted by the judge was untenable and discern no reason for interfering with the court's exercise of its discretionary authority in determining a reasonable counsel fee. See Center Grove Associates v. Hoerr, 146 N.J. Super. 472, 474-475 (App.Div. 1977).
*245 Therefore, that provision of the final judgment denying plaintiffs' motion for summary judgment is reversed, thereby entitling them to retain the deposit of $10,000 as liquidated damages in view of buyers' default; that provision of the final judgment granting defendants' motion for summary judgment is affirmed, thereby entitling defendants to recover from plaintiffs' actual damages in the sum of $10,000 and interest thereon, punitive damages of $50 and attorneys' fees of $1,500; and the matter is remanded to the Superior Court, Law Division, Burlington County, for further proceedings on plaintiffs' cross-claim against the third-party defendant, Maffucci Realty, Inc. consistent with this opinion.
NOTES
[1] The form of contract used by the broker had not been approved by the New Jersey Division of Consumer Affairs or certified by the Attorney General as being in compliance with the Plain Language Law.
[2] The rationale for these conclusions is set forth in Judge Haines' opinion reported at 207 N.J. Super. 539.
[3] We refer to the provisions contained on the "Standard Form of Real Estate Sales Contract Adopted by the Burlington County Board of Realtors" (118 NJAR 382), which form has been certified by the Attorney General to be in compliance with the Plain Language Law.
[4] While the violation permitted such a recovery, it was not available as a defense to the sellers' claim for breach of the contract. N.J.S.A. 56:12-11.
[5] This letter opinion was issued subsequent to Judge Haines' published opinion.