229 N.J. Super. 163 (1988)
550 A.2d 1291
THE KISLAK COMPANY, INC. PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
RICHARD B. BYHAM AND CATHERINE BYHAM, JOINTLY AND SEVERALLY, DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted May 23, 1988.
Decided December 12, 1988.
*165 Before Judges J.H. COLEMAN and HAVEY.
Frederick M. Testa, attorney for appellant (Frederick M. Testa on the brief).
Jack W. Tapper, attorney for respondents and cross-appellants (Jack W. Tapper on the brief).
The opinion of the Court was delivered by HAVEY, J.A.D.
Plaintiff Kislak Company, Inc. (Kislak) appeals from a judgment entered after a bench trial dismissing its complaint against defendants Richard and Catherine Byham. Kislak, a real estate broker, produced a buyer for property defendants had listed with Kislak. The property was owned by Byham Enterprises, Inc. (Byham Enterprises), of which defendants were stockholders. The trial judge dismissed the complaint, concluding that since defendants were not the title owners of the property, no commission was due.
On appeal, Kislak contends that: (1) a commission is due because it produced a ready, willing and able buyer; (2) an individual who signs a listing agreement personally may be held liable for a commission for the sale of property which he does not own; (3) there was no mutual mistake in fact in the execution of the listing agreement, and (4) Byham Enterprises' "nominal ownership" of the property should be disregarded in determining defendants' liability to pay the commission.
Defendants cross-appeal from the dismissal of their counterclaim in which they alleged Kislak violated the Plain Language Act, N.J.S.A. 56:12-1, et seq.
*166 On Kislak's appeal we reverse and remand for further proceedings. We conclude that defendants were personally liable for any commission due Kislak. The matter is remanded for a determination by the trial judge as to whether Kislak produced a ready, willing and able buyer under terms acceptable to the seller. On defendants' cross-appeal, we affirm the judgment dismissing their counterclaim.
On March 15, 1982, Kislak entered into an exclusive listing agreement with defendants to sell an apartment complex in Berlin, New Jersey, known as Winding Way Apartments. The listing agreement ran from March 15 to July 15, 1982. The sales price was fixed at $600,000 and defendants agreed to take back a ten-year second mortgage for $243,000 at interest rates increasing from 10% to 14% over the ten-year term. On April 16, 1982 the parties amended the listing agreement, reducing the asking price to $595,000 and the cash payment from $125,000 to $110,000. Under the amended listing, defendants agreed to take back a $253,000 second mortgage for a ten-year period with the "manner of payment to be negotiated but in no event more than as stated in exclusive [listing] agreement dated March 15, 1982."
Kislak presented defendants with an offer to purchase dated May 5, 1982 from F.G. & R. Holdings, Inc. (F.G. & R.). The offer price was $595,000 with F.G. & R. assuming the first mortgage of approximately $232,000 and seller taking back a $253,000 second mortgage on the terms set forth in the March 15, 1982 listing. F.G. & R. gave a $2,000 deposit, with $108,000 cash due at closing which was tentatively scheduled for July 1, 1982.
On May 20, 1982 defendants' attorney notified Kislak that no commission was due because the property was wholly owned by Byham Enterprises, and the corporation had never authorized defendants to sell the property. The attorney informed Kislak that Byham "repudiates any listing, or sale involving the Winding Way Apartments." He advised Kislak that defendants *167 "either forgot or did not realize that the corporation owned the property instead of them as individuals."
Byham Enterprises had taken title to the property in question in 1978. At that time Frank Schmidt, Catherine Byham's father, owned 79% of the corporate stock and Catherine owned 21% of the stock. Richard and Catherine were president and secretary-treasurer of the corporation respectively. On August 2, 1980, Frank died, leaving by will his shares in the corporation to Catherine. Article FOURTH of the will provided:
The interest of any beneficiary of this Will in any income or principal shall not be subject to anticipation or to voluntary or involuntary alienation.
Catherine was the executrix of Frank's estate. As executrix, she paid the federal estate and New Jersey inheritance taxes in March and May 1981. The New Jersey inheritance tax waiver was issued June 30, 1982, but Catherine testified she did not receive it until October 1982.
In dismissing plaintiff's complaint, the trial judge focused on the undisputed fact that the "seller" was Byham Enterprises and not defendants individually. The judge noted that during the period of the listing agreement, March 15 to July 15, 1982, Frank's estate was still being administered, and under the will, Catherine could not pledge the stock or vote Frank's shares to sell the property while administration was pending. Further, the judge reasoned that since the New Jersey tax waiver had not issued until June 30, 1982, neither could the stock be transferred to her, nor could she as executrix transfer the property until that date. The judge therefore concluded Kislak had not "produce[d] a ready, willing and able buyer for the seller, Byham Enterprises, Inc., when it submitted the alleged offer on May 5, 1982."
In our view, the trial judge placed form over substance. A corporate officer may be held personally responsible for a real estate commission on a listing agreement signed by him personally, even if the property is owned by the corporation. *168 Sadler v. Young, 78 N.J.L. 594 (1910). In Sadler, the Supreme Court held:
In the first place, it does not follow, as a necessary inference, that because the land was owned by a corporation of which the defendant was president, he was acting as its agent in making the contract with the plaintiff. His official relation to the corporation was no bar to his right to make a personal contract with the plaintiff of the tenor of that sued upon, and it is quite possible that his financial interest in the corporation was of sufficient importance to induce him to do so. [Id. at 596].
Here, defendants were the sole stockholders of the corporation at the time they signed the listing agreement. They held 21% of the shares prior to Frank's death in 1980, and upon his death, his shares devolved to Catherine under the terms of Frank's will. See N.J.S.A. 3B:1-3. Therefore, defendants' personal interest in executing the listing agreement as individuals is self-evident, since as sole stockholders they stood to benefit directly from the sale of the property.
Sadler further states:
In the second place, even if it be assumed that in making the contract he acted as the agent of the corporation, he is not on that ground relieved from personal responsibility. The body of the contract provides that he  not the corporation  shall pay the commission, and it is signed by him personally, and not as the agent or representative of the corporation. [Id. at 596].
Thus, even if defendants had acted as agents for Byham Enterprises, they would be personally responsible on the listing agreement since they agreed personally to pay the commission.
Implicit in the trial judge's findings is that, since 79% of the corporate shares were tied up in Frank's estate, Byham Enterprises could not convey the property to the prospective buyer. However, as earlier stated, upon Frank's death his shares devolved to Catherine under the terms of his will. See N.J.S.A. 3B:1-3. All that had to be accomplished was the technical transfer of the shares to Catherine. While tax waivers had not yet been issued when the listing agreement was signed by defendants, the State and federal taxes had been paid one year earlier. It is true that N.J.A.C. 18:26-11.29 and 11.1 prohibit transfer of corporate stock or estate realty until written consent of the director is obtained. However, these regulations *169 prohibit the transfer of personal and real property. The tax waiver was issued on June 30, 1982. The transfer of the property was not scheduled until on or after July 1, 1982. Therefore, there was no legal impediment to the sale of the property by defendants on behalf of the corporation.
The trial judge also reasoned that the listing agreement had been entered into under a mutual mistake in fact in that neither party realized that the true seller was Byham Enterprises. Citing Beachcomber Coins, Inc. v. Boskett, 166 N.J. Super. 442, 445 (App.Div. 1979), the judge concluded that defendants had the right to void the agreement because of the mistake after it "was discovered that the Byhams, as individuals, did not own the property."
However, the evidence is overwhelming that defendants knew at the time they signed the listing agreement the property was owned by Byham Enterprises. Richard, as president, and Catherine, as secretary-treasurer, signed a corporate bond given to the mortgagee when the corporation acquired the property in 1978. They also signed personally to guarantee the corporate debt. As manager of the apartment complex, Catherine executed leases in the corporate name and signed and issued corporate checks. As executrix, she filed federal, estate and New Jersey inheritance tax returns in 1981 reflecting that the property in question was owned by Byham Enterprises. The evidence does not support the suggestion, as embodied in defendants' attorney's letter of May 20, 1982, that defendants "forgot" they were not title owners to the property.
We conclude that defendants were bound by the terms of the listing agreement. The issue then becomes whether plaintiff had produced a ready, willing and able buyer on terms agreeable to the seller. See Van Winkle & Liggett v. G.B.R. Fabrics, Inc., 103 N.J. 335, 343-344 (1986); Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 551 (1967). When the broker produces a buyer ready and willing to purchase on the seller's terms, and a contract is not entered into by reason of the *170 seller's fault, as for example, where he subsequently changes his mind, the seller is liable to the broker for the commission. Stanchak v. Cliffside Pk. Lodge # 1527, L.O.M., 116 N.J. Super. 471, 480 (App.Div. 1971).
Defendants argue that no competent evidence was adduced to support a finding that the prospective buyer, F.G. & R. was financially able to close title on the terms of its offer. They also argue that Kislak did not earn its commission because there was no meeting of the minds between buyer and seller respecting substantial terms of the agreement. Inclusive in that argument is defendants' assertion that the attorney review clause in the offer made it open to cancellation by either parties' attorney.
Unfortunately, the trial judge did not address these issues. We therefore cannot, and should not, decide them. Accordingly, we remand for appropriate findings as to the issue of whether Kislak produced a ready, willing and able buyer on terms agreeable to the seller. We leave it to the discretion of the trial judge as to whether additional testimony on the issues is necessary.
On their cross-appeal, defendants argue that their counterclaim under the Plain Language Act, N.J.S.A. 56:12-1, should not have been dismissed. They assert that the act was violated by the confusing language of the listing agreement. The trial judge, in dismissing the counterclaim, relied on language in the Law Division opinion in Wheatly v. Myung Sook Suh, 207 N.J. Super. 539, 547 (Law Div. 1985), aff'd in part, rev'd in part 217 N.J. Super. 233 (App.Div. 1987), that "[b]rokers are not subject to the Act." See also N.J.S.A. 56:12-3.
We need not address defendants' contention that the trial judge took the language from the Law Division opinion in Wheatly out of context, since we are satisfied that the listing agreement was not a "consumer contract" as defined by the act. While the agreement here may be deemed a "[c]ontract[] for services including professional services," the services were *171 not "obtained for personal, family or household purposes." See N.J.S.A. 56:12-1f. The listing was for the sale of a commercial apartment complex, not the sale of a residential home.
Affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.