Louis P. WARDEN, Plaintiff,

v.

E.R. SQUIBB & SONS, INC., Defendant.

No. CV–91–0456.

United States District Court,
E.D. New York.

Dec. 30, 1993.

Kenneth Ware, New York City, for plaintiff.

Stuart M. Feinblatt, Sills Cummis Zuckerman Radin Tischman Epstein & Gross, P.A., New York City, for defendant.

## MEMORANDUM AND ORDER

DEARIE, District Judge.

Plaintiff Louis P. Warden initiated this action against his former employer, defendant E.R. Squibb & Sons, Inc., alleging discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964 and tortious interference with prospective contractual relations. Defendant has moved for summary judgment dismissing plaintiff's complaint on the grounds that a written settlement agreement between the parties bars this action in its entirety. For the reasons set forth below, defendant's motion is granted in part and denied in part.

### Background

Plaintiff was employed by defendant E.R. Squibb & Sons, Inc. as a pharmaceutical sales representative from June 22, 1977, through July 10, 1990. Prior to his termination, plaintiff, represented by counsel, and defendant began negotiating the terms of plaintiff's separation from the company. On August 28, 1990, the parties executed a Separation Agreement and General Release (the "settlement agreement"). Under the terms of the settlement agreement, plaintiff released defendant from all claims, including claims of racial discrimination and claims growing out of his employment and its termination. Plaintiff also agreed to withdraw any pending claims of discrimination and retaliation against Squibb. In consideration, plaintiff received $56,581.24 plus continued medi-

cal, hospital, and dental insurance benefits for one year.

Contrary to the agreement, plaintiff did not dismiss a charge pending before the New York State Division of Human Rights. On October 19, 1992, the Commissioner of Human Rights dismissed the claim based on the express terms of the settlement agreement. Plaintiff continued to pursue that claim by commencing a special proceeding in New York State Supreme Court.

In addition, plaintiff filed a discrimination claim with the State of New York Workers' Compensation Board in November of 1990. Two months later, on January 15, 1991, plaintiff initiated this action in the Supreme Court of the State of New York seeking money damages for discrimination on the basis of race and tortious interference with prospective contractual relations. The action was timely removed to federal court, and defendant filed a counterclaim seeking, among other things, to enforce the terms of the settlement agreement. By order dated September 17, 1992, this Court stayed all proceedings pending the resolution of the issue of the enforceability of the settlement agreement. In addition, by consent order dated February 16, 1993, plaintiff agreed to adjourn the special proceeding in New York State Supreme Court and agreed not to file any new charges against Squibb pending the Court's ruling. Defendant now moves for summary judgment dismissing plaintiff's complaint in its entirety on the grounds that the agreement is enforceable and bars plaintiff's claims. Defendant further moves for an award, in accordance with the settlement agreement, of costs, attorney's fees, and other expenses incurred as a result of plaintiff's failure to abide by the agreement's terms.

### Terms of the Settlement Agreement

Under the settlement agreement, plaintiff represented "that except for the charges filed against the Equal Employment Opportunity Commission ("EEOC") in August of 1989, June of 1990 and August of 1990 ... and the charge filed against Bristol–Myers

Squibb Company with the New York State Division of Human Rights, he ha[d] not filed any complaints or charges or lawsuits alleging race or age or national origin discrimination against [defendant] ... and that he [would] not do so at any time [in the future]." (Separation Agreement and General Release, Ex. G to Feinblatt Aff., ¶ 3.) Plaintiff agreed to "withdraw the [filed] race discrimination, retaliation and national origin charges with prejudice." (*Id.*) In addition, he released defendant from any claims he had or claimed to have based on "rights under federal, state or local laws prohibiting age or race or other forms of discrimination" and "claims growing out of his employment and its termination or any other legal restrictions on [defendant's] right to terminate its employees." (*Id.* at ¶ 13.) Plaintiff also waived "any reinstatement to any position with [defendant]." (*Id.* at ¶ 6.)

As consideration for plaintiff's settlement of his claims, defendant paid plaintiff $56,581.24. (*Id.* at ¶ 4.) Under the agreement, the payment was allocated to the settlement of plaintiff's claims against the company "based in tort, including those for pain and suffering and for infliction of emotional distress, as consideration for the waiver of rights of employment ... and the execution of [the settlement agreement]." (*Id.*) The agreement further provides that "[i]t is expressly understood that [plaintiff] is waiving all claims to severance payments, bonus payments, back pay, vacation pay, and any other past compensation or past payments of any kind." (*Id.*) Plaintiff was to continue to receive medical, hospital and insurance benefits for one year, or until July 31, 1991. (*Id.* at ¶ 5.) According to its terms, the agreement is to be construed under New Jersey law. (*Id.* at ¶ 16.)

### Discussion

Defendant moves for summary judgment dismissing plaintiff's complaint on the grounds that this action is barred in its entirety by the settlement agreement. Plaintiff concedes that he knowingly and voluntarily executed the settlement agreement.[1] Fur-

---

1. Although plaintiff contends in his complaint that he was coerced into signing the settlement agreement, see Amended Complaint at ¶¶ 1, 33 &

34, and suggests that he did not knowingly and voluntarily sign the settlement agreement by noting in his 3(g) statement that at the time he

ther, he has not offered to return the $56,-581.24 he received as consideration. Plaintiff nevertheless argues that the agreement is not binding. He contends that the agreement constitutes an "illegal" and therefore unenforceable contract. He further argues that defendant failed to fully perform its contractual obligations. The Court concludes that the settlement agreement is enforceable. Thus, as expressly set forth in the agreement, plaintiff's discrimination claims are barred. However, the Court cannot at this time conclude as a matter of law that the agreement bars plaintiff's claim for tortious interference with prospective contractual relations.

### Legality of Contract

Plaintiff contends that the settlement agreement is an "illegal" contract on three grounds: it constitutes a waiver of plaintiff's right to receive workers' compensation, it constitutes an attempt to "cover-up" defendant's violation of the workers' compensation law prohibiting discrimination against an employee who has filed or attempted to file a workers' compensation claim, and it constitutes an attempt to "cover-up" defendant's violation of the labor laws prohibiting retaliation against an employee who reports unlawful activities of his employer. Essentially, plaintiff argues that the release of certain claims pursuant to the settlement agreement is contrary to public policy and renders the agreement unenforceable. "A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or if the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms." Restatement (Second) of Contracts § 178 (1979).

Under the settlement agreement, plaintiff explicitly released all discrimination claims arising under federal, state, or local law and all claims growing out of legal restrictions on Squibb's right to terminate its employees. Contracts with similarly broad release provi-

sions have been enforced. *See, e.g., Frumkin v. International Business Machines Corp.,* 801 F.Supp. 1029 (S.D.N.Y.1992); *Ponzoni v. Kraft General Foods, Inc.,* 774 F.Supp. 299 (D.N.J.1991), *aff'd without opinion,* 968 F.2d 14 (3d Cir.1992); *Joseph v. Chase Manhattan Bank, N.A.,* 751 F.Supp. 31 (E.D.N.Y.1990). In ruling on the enforceability of this agreement, the Court must determine whether an employee may release an employer from claims of discrimination in retaliation for filing for workers' compensation and claims of retaliation for engaging in "whistle-blowing" activities. The Court must also determine whether certain provisions of the settlement agreement effect a waiver of plaintiff's right to claim workers' compensation.

The Court concludes that the settlement agreement does not include a waiver of claims for workers' compensation. Further, the Court concludes that although an employee may not waive his right to claim workers' compensation, an employee may validly waive claims of discrimination in retaliation for filing compensation claims and may validly release claims of retaliation for engaging in whistle-blowing activities. Therefore, the settlement agreement is enforceable. By its express terms it bars plaintiff's discrimination claims.

### Claims Under New York Workers' Compensation Law

■ The parties agree that New York workers' compensation law governs plaintiff's claims for compensation for work-related injuries. "Every employer subject to [the workers' compensation law] shall ... secure compensation to his employees and pay or provide compensation for their disability or death from injury arising out of and in the course of the employment without regard to fault as a cause of the injury...." N.Y.Work.Comp.Law § 10 (McKinney 1992). Workers' compensation is an injured employee's only remedy against his employer. N.Y.Work.Comp.Law § 11 (McKinney 1992). A worker's right to receive such compensa-

signed the agreement he was in dire need of money and on prescription medication, see Plaintiff's Statement of Material Facts in Dispute

at ¶ 3, at oral argument, plaintiff's counsel conceded that plaintiff knowingly and voluntarily entered into the settlement agreement.

tion cannot be waived. N.Y.Work.Comp.Law § 32 (McKinney 1993) ("No agreement by an employee to waive his right to compensation under this chapter shall be valid."). In addition, an employer may not discharge or otherwise discriminate against an employee "because such employee has claimed or attempted to claim compensation from such employer...." N.Y.Work.Comp.Law § 120 (McKinney Supp.1993).

### Waiver of Compensation Claims

■ As set forth above, pursuant to Workers' Compensation Law § 32, an employee may not validly waive his right to claim workers' compensation. Plaintiff argues that the provisions of paragraphs four, six, and thirteen of the agreement eliminate his right to claim workers' compensation and that because that right cannot be waived, the agreement is unenforceable. The Court concludes that under the agreement plaintiff's right to workers' compensation is not waived.

Paragraph six of the settlement agreement clearly does not operate to eliminate plaintiff's right to workers' compensation. It addresses only claims for reinstatement, not claims for workers' compensation. Paragraph four also does not constitute a waiver of plaintiff's right to claim compensation. It sets forth the amount to be paid to plaintiff as consideration for his waiver of rights of employment and the execution of the settlement agreement. It states that the entire amount to be paid to plaintiff shall be "allocable to the settlement of [plaintiff's] claims against [defendant] based in tort, including those for pain and suffering and for infliction of emotional distress...." (Separation Agreement and General Release, Ex. G to Feinblatt Aff., ¶ 4.) A claim for workers' compensation, however, is not a claim based in tort.[2] Workers' compensation benefits are awarded to an employee for injuries arising out of and in the course of his employment without regard to fault, and, as noted above, such benefits are an injured employee's exclusive remedy against his employer. N.Y.Work.Comp.Law §§ 10, 11 (McKinney

1992). Therefore, paragraph four does not effect a waiver of plaintiff's right to workers' compensation.

In construing the broad language of paragraph thirteen, the court must read the agreement as a whole and accord it a rational meaning in keeping with its express general purpose. *Wheatly v. Sook Suh, Inc.,* 217 N.J.Super. 233, 525 A.2d 340, 344 (App.Div. 1987); *Joseph Hilton & Associates, Inc. v. Evans,* 201 N.J.Super. 156, 492 A.2d 1062, 1070 (App.Div.), *cert. denied,* 101 N.J. 326, 501 A.2d 977 (1985). It is clear that the general purpose of the agreement is to settle plaintiff's various claims of discrimination and retaliation. Claims for workers' compensation benefits are not explicitly waived in any provision. In contrast, plaintiff specifically agrees to withdraw pending charges of discrimination and retaliation and explicitly releases claims of discrimination and claims growing out of the termination of his employment. Further, as set forth in the recital, the parties entered into the agreement to "settle fully and finally all differences between them, including, but not limited to, any differences that might arise out of the [plaintiff's] employment with the [defendant], and the termination thereof." (Separation Agreement and General Release, Ex. G to Feinblatt Aff.) To construe the agreement to include a waiver of compensation claims for work-related injury would not comport with the agreement's express and obvious purpose of resolving disputes regarding defendant's claimed unequal treatment and discharge of plaintiff.

■ Moreover, it is a general principle that if there are two reasonable interpretations of an agreement, preference should be given to that which renders the agreement enforceable. *See, e.g., Great Northern Ry. Co. v. Delmar Co.,* 283 U.S. 686, 691, 51 S.Ct. 579, 581, 75 L.Ed. 1349 (1931) ("[W]here two constructions of a written contract are possible, preference will be given to that which does not result in violation of the law."); E. Allan Farnsworth, Contracts § 5.1, at 349–50 (2d ed. 1990) ("Given a choice between two

---

**2.** According to counsel who represented plaintiff during the negotiation of the settlement agreement, the payment was allocated to the settle-

ment of plaintiff's tort claims so that the payment would not be taxed to plaintiff. (*See* Cipriano Dep., Ex. B to Feinblatt Aff., at 33.)

reasonable interpretations of an agreement, a court will prefer the one under which the agreement involves no contravention of public policy and is enforceable to one which involves such a contravention and is not enforceable."). Accordingly, the Court concludes that paragraph thirteen of the settlement agreement, like paragraphs four and six, does not eliminate plaintiff's right to claim workers' compensation benefits.

### Waiver of Discrimination Claims

■ Workers' Compensation Law § 120, prohibiting an employer from discriminating against an employee in retaliation for seeking compensation, does not invalidate waivers of claims of retaliatory discrimination. Plaintiff argues, however, that pursuant to Workers' Compensation Law § 32 waivers of retaliatory discrimination claims are invalid and that because those claims are waived under the settlement agreement, the agreement is unenforceable. Plaintiff cites no authority to support his argument, and the language of the workers' compensation statute itself does not support such an interpretation. An examination of the relevant provisions reveals that a claim for compensation is different from a claim of discrimination and no logical interpretation of section 32 has been offered to extend its proscription to discrimination claims. Because section 32 by its terms applies only to compensation claims, it does not operate to invalidate waivers of discrimination claims.

"The purpose of Workers' Compensation Law § 120 ... is to protect employees from retaliation by an employer for filing claims for compensation...." *Johnson v. Moog, Inc.*, 114 A.D.2d 538, 494 N.Y.S.2d 152, 154 (App.Div.3d Dep't 1985); *see also Duncan v. New York State Developmental Center*, 63 N.Y.2d 128, 481 N.Y.S.2d 22, 24, 470 N.E.2d 820, 822 (1984). In contrast, section 32 "is intended to protect [injured employees] from [their] own improvidence and folly." *Martin v. C.A. Productions Co.*, 8 N.Y.2d 226, 203 N.Y.S.2d 845, 848, 168 N.E.2d 666, 668 (1960). The two sections, each with its own purpose, operate independently.

A successful workers' compensation claimant is awarded "compensation," the "money allowance" payable for disability or death from injury. N.Y.Work.Comp.Law §§ 2(6), 10 (McKinney 1992); *see also* N.Y.Work. Comp.Law § 2 (McKinney 1992), Practice Commentaries by Martin Minkowitz, ¶ 6 ("The term compensation as used in this chapter refers to the money allowance, and funeral expenses in the event of death, payable to an injured employee as a result of an injury which arose out of and in the course of the employment."). In contrast, an employee who prevails on a claim of discrimination "shall be restored to employment or otherwise restored to the position or privileges he or she would have had but for the discrimination and shall be compensated by his or her employer for any loss of compensation arising out of such discrimination...." Thus, a compensation claim is different from a discrimination claim. Section 32 specifically invalidates waivers of the right to "compensation." It does not address, much less invalidate, waivers of discrimination claims. Because claims of discrimination in retaliation for filing or attempting to file compensation claims may be waived, the fact that the settlement agreement includes a release of such claims does not render it unenforceable.

### Claims Under Labor Law §§ 740 & 215

■ Finally, plaintiff argues that the settlement agreement is unenforceable on the grounds that it seeks to eliminate his claims of retaliation for "whistle-blowing" activities. Under section 740 of New York Labor Law, an employer is prohibited from retaliating against an employee for disclosing or threatening to disclose a violation of law creating a substantial and specific danger to the public health or safety, providing information or testifying regarding any such violation, or objecting to or refusing to participate in any such activity in violation of a law. Under section 215, an employer is prohibited from discharging, penalizing, or in any other manner discriminating against an employee because the employee has complained to the employer or the Industrial Commissioner about a violation of labor law. Both sections provide a right of action to an employee who has been subjected to retaliation. However, neither section, nor any other labor law sec-

tion, prohibits the release of such retaliation claims. Again, plaintiff has failed to cite any case law suggesting that a release of such claims is invalid.

■ Permitting employees to waive claims of retaliatory discharge for whistle-blowing activities is consistent with the principle that employees may validly release claims of discrimination under Title VII, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. *See Bormann v. AT & T Communications, Inc.*, 875 F.2d 399, 402 (2d Cir.), *cert. denied*, 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989); *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 517–18 (3d Cir.1988). In a comparable case, the Tenth Circuit concluded that claims of wrongful discharge for whistleblowing activities were barred by a release similar to that signed by plaintiff. *See White v. General Motors Corp., Inc.*, 908 F.2d 669 (10th Cir.1990), *cert. denied*, 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). The Court concludes that claims of retaliatory discharge may be released.

■ Throughout his submissions, plaintiff alleges that defendant forced him to engage in various practices, including taste-testing one of the drugs he sold, in violation of the Prescription Drug Marketing Act of 1987 (the "Act"). In his affidavit he states that he believes that the money paid to him pursuant to the settlement agreement constituted "extortion" and was an attempt to prevent him from reporting, among other things, defendant's violations of various provisions of the Act. (Pla.Aff., ¶ 4.) Such an agreement would be unenforceable. *See McGrane v. Reader's Digest Ass'n, Inc.*, 822 F.Supp. 1044, 1045–46, 1051–52 (S.D.N.Y.1993). However, nothing in the settlement agreement is designed to preclude plaintiff from reporting violations of the Act or any other health and safety law violations to the proper authorities. Further, at oral argument and in his memorandum of law plaintiff argued that the settlement agreement is illegal on the grounds that it constitutes an attempt by defendant to conceal violations of workers' compensation law and labor law prohibiting retaliatory personnel action, not on the grounds that it constitutes an attempt to prevent plaintiff from reporting defendant's violations of health and safety law.

Plaintiff makes serious allegations, but he has failed to present any authority suggesting that claims under section 740 and section 215 cannot be validly waived. The Court concludes that the release of such claims is valid. The settlement agreement is therefore enforceable, and by its terms, bars plaintiff's claims of discrimination.

*Failure of Performance*

In addition to challenging the enforceability of the settlement agreement on grounds that the agreement is illegal, plaintiff argues that he is not bound by the agreement because, contrary to its terms, defendant did not provide continued medical, hospital, and dental benefits. According to the Director of Benefits Administration at Squibb at the time, due to an administrative error, plaintiff's continued coverage was not properly recorded. The error was corrected by November of 1991, shortly after plaintiff informed defendant that his claims for benefits had been rejected, and plaintiff was advised to re-submit any eligible medical or dental bills for which he had been denied coverage. According to the benefits administration director, all eligible medical and dental bills incurred during the period for which plaintiff was to receive continued benefits under the settlement agreement would have been covered. (*See* Affidavit of Kathryn P. Kehoe, ¶ 5–6.) Plaintiff has not presented any evidence to the contrary.

The Court concludes that there is no genuine issue of material fact with respect to defendant's performance under the agreement. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–252, 106 S.Ct. 2505, 2510–2512, 91 L.Ed.2d 202 (1986). Defendant's performance was substantial. *See Jacob & Youngs, Inc. v. Kent*, 230 N.Y. 239, 243, 129 N.E. 889, 891 (1921) (Cardozo, J.) (whether performance is substantial is a "question ... of degree, to be answered, if the inferences are certain, by the judges of the law."). Plaintiff received the $56,581.24 payment due under the agreement without incident and

retained it.[3] Certainly, defendant's brief clerical lapse does not render the entire agreement unenforceable. *See Inhabitants of City of Plainfield v. Palmer,* 72 F.2d 312, 313 (3d Cir.1934) (substantial performance by one party coupled with the retention of benefits by the other allows former to bring an action on the contract); E. Allan Farnsworth, Contracts § 8.16, at 638 (2d ed. 1990). Moreover, any failure of performance was cured by the correction of the administrative error. *See* Farnsworth, *supra,* § 8.17, at 640. Accordingly, plaintiff is bound by the agreement.

### Tortious Interference Claim

As discussed above, the Court concludes that the settlement agreement bars plaintiff's claims of discrimination. However, the Court cannot conclude at this time that the agreement bars plaintiff's claim of tortious interference with prospective contractual relations.

Plaintiff alleges that he has been unable to obtain employment since his termination because defendant has provided "false and unauthorized information to potential employers and non-essential persons." (Amended Complaint, ¶ 62.) Nothing in the submissions to the Court specifically addresses whether such a claim is barred by the settlement agreement. Upon examination of the agreement, it appears that neither paragraph four of the agreement, under which plaintiff agreed not to file any complaints alleging race, age, or national origin discrimination at any time in the future, nor paragraph thirteen, under which plaintiff agreed to release defendant from all claims plaintiff had or claimed to have prior to and at the time the agreement was entered into[4], bars a claim of tortious interference with prospective contractual relations based on actions taken by

defendant subsequent to plaintiff's separation. Accordingly, defendant's motion for summary judgment dismissing plaintiff's claim of tortious interference with prospective contractual relations is denied.

### Fees

■ Defendant requests an award of costs, attorneys fees, and other expenses pursuant to the terms of the settlement agreement. Defendant argues that it has incurred substantial costs and fees in the course of defending claims plaintiff failed to withdraw and claims plaintiff initiated in violation of the agreement, including the claim pending at the time of the settlement agreement before the New York Division of Human Rights and the discrimination claim filed with the New York Workers' Compensation Board after the execution of the agreement. Under the agreement, plaintiff agreed "to indemnify and hold [defendant] harmless from and against any and all loss, cost, damages or expenses, including, without limitation, attorney's fees incurred by [defendant] ... by reason of any representation made [in the agreement by plaintiff] which was false, and known by [plaintiff] to be false *when made.*" (Separation Agreement and General Release, Ex. G to Feinblatt Aff., ¶ 14 (emphasis added)). On the basis of the current record, it appears that at least in partial compliance with the terms of paragraph three of the settlement agreement, plaintiff obtained the administrative withdrawal of the discrimination charges he filed with the E.E.O.C.[5] Thus, material issues of fact exist with respect to plaintiff's intent to comply with the agreement, and, therefore, the Court cannot conclude as a matter of law that plaintiff knowingly made false representations at the time he entered into the agreement. Accordingly, defendant's motion for

**3.** In his 3(g) statement, plaintiff states that he *received only $41,000. His attorney retained the* balance of the $56,581.24 for his fee. (*See* Plaintiff's Statement of Material Facts in Dispute at ¶ 5.) Plaintiff's fee arrangement has no relevance to the enforceability of the settlement agreement.

**4.** Specifically, the settlement agreement provides that plaintiff releases all claims he "now has, owns, or holds, or claims to have, own or hold,

or which [he] at any time heretofore had, owned, or held, or claimed to have, own, or hold." (Separation Agreement and General Release, Ex. G to Feinblatt Aff., ¶ 13.)

**5.** Plaintiff alleges that he sought and obtained an administrative withdrawal of the E.E.O.C. claims. (Amended Complaint, at ¶ 34.) None of defendant's submissions indicates that plaintiff failed to withdraw those charges.

costs and attorney's fees is denied at this time.

## Conclusion

Defendant's motion for summary judgment dismissing plaintiff's discrimination claims is granted. Defendant's motion for summary judgment dismissing plaintiff's claim of tortious interference with prospective contractual relations is denied. Defendant's request for an order requiring plaintiff to dismiss with prejudice all pending claims against Squibb or its representatives and permanently enjoining plaintiff from asserting new legal claims in any forum against Squibb or its representatives is also denied.

SO ORDERED.