656 A.2d 16

THE VALLEY HOSPITAL, A CORPORATION, PLAINTIFF, v. GERALD F. JULIANO, ET AL., DEFENDANTS, AND NATIONWIDE ADJUSTMENT CORPORATION, A CORPORATION, RICHARD J. LIPARI AND RAYMOND DE FILIPPIS, DEFENDANTS–APPELLANTS.

MIDLANTIC NATIONAL BANK, DEFENDANT/THIRD–PARTY PLAINTIFF–RESPONDENT, v. APRIL LIPARI, JOHN J. LIPARI, AND ELIZABETH M. LIPARI, THIRD–PARTY DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued February 23, 1995—Decided March 31, 1995.

518

Before Judges GAULKIN, BAIME and ARIEL A. RODRÍGUEZ.

*Scott K. McClain* argued the cause for appellants (*Winne, Banta, Rizzi, Hetherington & Basralian,* attorneys; *Robert M. Jacobs,* of counsel).

*Gregg S. Sodini* argued the cause for respondent (*Cuyler Burk,* attorneys).

The opinion of the court was delivered by

GAULKIN, P.J.A.D.

In this action initiated by The Valley Hospital (Valley), Midlantic National Bank (Midlantic) was granted partial summary judgment "as to liability" against Richard J. Lipari, April Lipari, John J. Lipari and Elizabeth M. Lipari (the Liparis) on claims asserted against them as alleged guarantors of obligations owed to Midlantic by Nationwide Adjustment Corporation (Nationwide). Midlantic was also awarded partial summary judgment against Nationwide and the Liparis for attorneys fees and costs of $108,530.15. Nationwide and the Liparis appeal.[1]

*I*

Valley contracted with Nationwide, a debt-collection agency, to collect delinquent patient accounts. Monies collected by Nationwide were deposited in a trust account maintained by Nationwide at Midlantic. Checks received on delinquent accounts would be endorsed with both Nationwide and Valley endorsements and deposited into the Midlantic account. After the checks cleared, Nationwide would remit the full amount to Valley, which would then return a percentage to Nationwide as its collection fee.

---

[1] The order awarding counsel fees was certified as final pursuant to *R.* 4:42–2. The order holding the Liparis liable as guarantors was not so certified, but we find it appropriate to grant leave to appeal *nunc pro tunc.*

Valley employed Gerald F. Juliano as its Director of Patient Accounting. According to Valley, Juliano stole checks from Valley and delivered them to persons at Nationwide, who fraudulently endorsed them with a Valley endorsement, deposited them into the Midlantic trust account and ultimately distributed the proceeds to Juliano and the Nationwide malefactors. Juliano pled guilty to federal criminal charges arising out of his participation in that scheme; at his deposition in this matter, Juliano identified Richard J. Lipari and Raymond De Filippis as Nationwide participants in the scheme, but whether or not they participated has not been adjudicated in this litigation.

In this action, Valley sought compensatory and punitive damages against Juliano, Nationwide, Richard J. Lipari and Raymond De Filippis, and others, for their alleged participation in the check diversions. Valley also joined Midlantic, seeking recovery for Midlantic's payments to Nationwide on false, forged or fraudulent Valley endorsements. Among a variety of crossclaims and counterclaims, Midlantic sued Nationwide for breach of its guarantees of prior endorsements and warranties of good title, see N.J.S.A. 12A:3-417, 4-207, and sued the Liparis on personal guarantees they had given Midlantic for "the payment, when due, of each and every obligation ... owing to Midlantic by Nationwide."

On Midlantic's motion for partial summary judgment, the Law Division determined that the Liparis were liable to Midlantic under their personal guarantees for all monies to be found due and owing to Midlantic by Nationwide. On Midlantic's later motion, the court awarded the $108,530.15 attorneys fees against Nationwide, and also imposed that obligation against the Liparis as guarantors. Those determinations are the subjects of the appeal.[2] After the appeal was filed, Valley settled and dismissed

---

[2] The order awarding attorneys' fees also imposes a "judicial lien" on the assets of Nationwide, Richard J. Lipari and Raymond De Filippis. De Filippis has joined with Nationwide and the Liparis on the appeal, but no argument has been presented concerning the liens. We assume that all parties agree that the liens stand or fall together with the fee award.

its claims against Midlantic, Nationwide, Richard J. Lipari and Raymond De Filippis.

## II

Commencing in 1980, the Liparis executed and delivered a succession of personal guarantees to Midlantic, the last group dated April 1, 1986. Midlantic Branch Manager Galioto described the guarantees as having been given "in connection with the ongoing business operations of Nationwide," but April Lipari's answering certification set forth—without subsequent contradiction—that they had been given to secure "a $100,000.00 annually renewable line of credit account that Nationwide has with Midlantic." The April 1, 1986 guarantees all utilized a Midlantic printed form, which stated in relevant part:

> For Valuable Considerations, and to induce you to loan money and extend credit in reliance hereon, I hereby guarantee, unconditionally, the payment, when due, of each and every obligation, direct or contingent, now existing or hereafter arising, owing to you by Nationwide Adjustment Corporation hereinafter called the Borrower.
>
> The Guaranty is a continuing guaranty, and shall remain in force until revoked by notice in writing to you, and revocation hereof shall not prejudice your claim hereunder with respect to any obligation arising prior to revocation.
>
> The Guaranty shall extend to and cover every extension or renewal of, and every obligation accepted in substitution for, any obligation guaranteed hereby, and I shall be bound hereby irrespective of the existence, value or condition of any collateral security you may at any time hold.
>
> &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;
>
> I hereby consent and agree that you may, without prejudice to any claim against me hereunder, at any time, or from time to time in your discretion, and without notice to me, (1) extend or change the time of payment, and the manner, place or terms of payment of any obligation hereby guaranteed, (2) exchange, release or surrender all or any collateral security which you may at any time hold in connection with any obligation hereby guaranteed, (3) sell, and yourself purchase, any such collateral at public or private sale or at any broker's board crediting net proceeds upon any obligation secured thereby, and (4) settle or compromise with the Borrower, or with any other person primarily or secondarily liable with the Borrower, any obligation hereby guaranteed, or subordinate the payment of any such obligation of the Borrower or other person to the payment of any other debt which may be owing to you.

No delay on your part in exercising any right hereunder, or in taking any action to collect or enforce payment of any obligation hereby guaranteed, either as against the Borrower or any other person primarily or secondarily liable with the Borrower, shall operate as a waiver of any such right or in any manner prejudice your rights against me.

I agree that, if the maturity of any obligation hereby guaranteed is accelerated, by bankruptcy or otherwise, as against the Borrower, such maturity shall also be deemed accelerated for the purposes of the Guaranty, and without demand upon or notice to me.

The Liparis argue that "the guarantees were intended to secure only the debt (i.e., the line of credit account) for which they were delivered, and any extension or renewal thereof." Midlantic responds that "the express terms of the guarantees could not be clearer" in specifying that they "are *not* limited to specific debts of Nationwide to Midlantic in *any* fashion." We conclude that the contractual language must be construed in the Liparis' favor.

There can be no doubt—indeed, Midlantic does not dispute—that the guarantees were required and given solely in support of Midlantic's grant of a $100,000 line of credit to Nationwide. To be sure, the Liparis guaranteed "unconditionally, the payment, when due, of each and every obligation, direct or contingent, now existing or hereafter arising, owing to [Midlantic] by Nationwide." That statement of the Liparis' obligation is all-encompassing, but the further language of the guarantees describes a narrower and more tailored undertaking. Each guarantee describes a singular purpose "to induce [Midlantic] to loan money and extend credit in reliance hereon." Each guarantee particularizes its intent to "extend to and cover every extension or renewal of, and every obligation accepted in substitution for, any obligation guaranteed hereby." Each guarantee concludes with an acceleration clause that is triggered "if the maturity of any obligation hereby guaranteed is accelerated." Those provisions all confirm the parties' understanding that the guarantees were designed to secure payment of Nationwide loans.

The guarantees thus describe contradictory obligations, one all-inclusive, the other limited. The ambiguity is appropriately resolved by interpreting the writings to impose only those obli-

gations the parties in fact contemplated; stated conversely, the ambiguous language ought not be construed to extend the parties' rights and obligations beyond their common contemplation. *See, e.g., Communications Workers v. Monmouth Co. Bd.,* 96 *N.J.* 442, 452, 476 *A.*2d 777 (1984) ("the circumstances that existed when the contract was made" may shed light on the parties' intention; "once the parties' intent is determined ... that intent may not be disregarded ... to add to, subtract from, modify, or alter any terms of the agreement"); *Wheatly v. Sook Suh,* 217 *N.J.Super.* 233, 240, 525 *A.*2d 340 (App.Div.1987) ("a subsidiary provision should not be interpreted in such a manner as to conflict with the obvious or dominant purpose of the contract"). That resolution of the ambiguity is also consistent with our well-settled law that "the language of a guaranty agreement must be interpreted against the bank who prepared the form, and at whose insistence the language was included." *Housatonic Bank v. Fleming,* 234 *N.J.Super.* 79, 82, 560 *A.*2d 97 (App.Div.1989). We accordingly reverse the partial summary judgments entered against the Liparis.

## III

The $108,530.15 counsel fee award in favor of Midlantic against Nationwide was entered under the purported authority of *N.J.S.A.* 12A:4–207(3):

Damages for breach of such warranties or engagement to honor shall not exceed the consideration received by the customer or collecting bank responsible plus finance charges and expenses related to the item, if any.

In the trial court, Midlantic successfully urged that the phrase "expenses related to the item" should be read to include its attorneys' fees and expenses in this litigation assertedly generated by Nationwide's breach of its warranties of good title to the checks in question. In support of its contrary argument that the statutory language ought not be so broadly interpreted, Nationwide relies on *McAdam v. Dean Witter Reynolds, Inc.,* 896 *F.*2d 750 (3d Cir.1990), where the court, called upon to "predict how the New

Jersey Supreme Court would decide the question," *id.* at 774, concluded that "we do not believe that attorneys' fees are appropriate under New Jersey law in an action under § 4–207." *Id.* at 777. Midlantic's reply is that *McAdam* (1) merely guesses at what the New Jersey Supreme Court might decide, (2) incorrectly focuses on New Jersey history and tradition and wrongly interprets the legislative history, and (3) "does a disservice to the public policy of this State."[3]

We find it unnecessary to recite and evaluate the conflicting arguments advanced by the parties with respect to *McAdam*. Having thoroughly considered those arguments, we are persuaded, substantially for the reasons fully expressed in *McAdam*, that the phrase "expenses related to the item" cannot and should not be read as allowing for the award of attorneys' fees and expenses in an action brought under *N.J.S.A.* 12A:4–207. The partial summary judgment in favor of Midlantic thus must be set aside.

The partial summary judgment orders dated October 27, 1993 and March 1, 1994 are reversed.

---

[3] Midlantic also argues that the fee award can be justified as traditional breach of contract damages. *See, e.g., Central Motor v. E.I. duPont de Nemours,* 251 *N.J.Super.* 5, 9, 596 A.2d 759 (App.Div.1991); *Dorofee v. Pennsauken Tp. Planning Bd.,* 187 *N.J.Super.* 141, 144, 453 A.2d 1341 (App.Div.1982). The motion judge was not asked to, nor did he, award fees on that theory. We therefore do not address the question.